**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DEANNA J. CHESSER,**

        **Plaintiff,**

                                   **Civil Action 2:13-cv-717**
**vs.**                               **Judge Peter C. Economus**
                                   **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Deanna J. Chesser, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security  ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15) and the administrative record (ECF No. 10).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively filed her applications for benefits on September 17, 2010, alleging that she has been disabled since July 31, 2008, at age 35.  (R. at 190-96, 197-200.)  Plaintiff alleges disability as a result of severe post-traumatic stress syndrome ("PTSD"), severe anxiety, severe panic attacks, anger issues, right-knee problems, ovarian cysts, spastic colon, and irritable bowel syndrome.  (R. at 233.)  Plaintiff's applications were denied initially and upon

reconsideration.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Rebecca B. Sartor held a hearing on December 13, 2011, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 38-46.)  Nancy Shapero, a vocational expert, also appeared and testified at the hearing.  (R. at 46-50.)  On January 12, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-26.)  On May 23, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified that she was severely molested by her father.  According to Plaintiff, she continues to see his face although he is deceased, which causes anxiety, anger, and paranoia. (R. at 39-40.)  Plaintiff reported that she gets scared in public and leaves places, such as the grocery store, when this occurs.  Plaintiff feels her medications work as long as she stays home and takes care of her children.  She does everything to try to keep her children safe and not hurt like she was.  *Id.*

Plaintiff testified to her physical impairments, including irritable bowel syndrome, multiple surgeries, and ACL reconstruction of her right knee.  (R. at 41.)  Plaintiff admitted to receiving Suboxone therapy after experiencing withdrawal symptoms from stopping Percocet. (R. at 41-42.)  Plaintiff testified that she attempted physical therapy, but stated her knee had not fully recovered and remains stiff and painful.  (R. at 41.)  Plaintiff explained that she continues to wear an adult diaper because she experiences digestive flares three weeks out of the month as a

result of her irritable bowel syndrome.  *Id.*  Plaintiff testified that her need to frequently use the restroom and bowel accidents negatively affected her job performance.  *Id.*

When asked about her daily activities, Plaintiff responded that it "depends on how [she wakes] up."  (R. at 42.)  Plaintiff testified she often wakes with a "jolt" due to having a vivid nightmare.  *Id.*  Plaintiff also acknowledged frequent crying spells, occurring three to four times a week.  (R. at 43.)  Plaintiff further stated that she believes she must stay home and away from the public out of fear of hurting herself or someone else.  *Id.*

Plaintiff testified that she had a driver's license, but only drove to the grocery store, doctor's appointments, and school, due to a fear of being in an accident.  (R. at 38-39.)  Plaintiff completed the ninth grade but did not graduate or obtain a general education diploma ("GED").  (R. at 39.)  She earned her cosmetology certificate with help from the test administrator after failing her first attempt.  *Id.*  Plaintiff testified that she did not read well but read to her children "all the time growing up."  *Id.*

Plaintiff testified that she lived in a mobile home, but was recently approved for a HUD certificate.  At the time of the hearing, Plaintiff was looking for a house.  (R. at 43.)  Plaintiff testified that she does housework and keeps busy until her children come home.  She washes dishes, sweeps, vacuums, and mops the floors.  Her children help her with the garbage and yard-work.  (R. at 44.)

**B.     Vocational Expert Testimony**

Nancy Shapero testified as the vocational expert ("VE") at the administrative hearing. (R. at 46-50.)  The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity to the VE.  First, the ALJ asked the VE to determine if there was any work in the regional or national economy that a hypothetical person of Plaintiff's age, educational

3

background, and work experience, who is capable of working at all exertional levels could perform with the following limitations: that she only have occasional interactions with the public, with coworkers, and with supervisors, that she be limited to routine and repetitive tasks, and that she only occasionally have a production pace.  (R. at 47-48.)  Based on the above hypothetical, the VE acknowledged that Plaintiff could not perform her past relevant work as a hair stylist.  (*Id.*)  The VE further testified that Plaintiff would be able to perform medium exertional level work, such as a dishwasher, with 2,200 regional jobs or in janitorial occupations, with 4,500 regional jobs.  She testified that Plaintiff could also perform light exertional level work, such as a housekeeper, with 2,800 regional jobs.  (R. at 48.)  Second, the ALJ asked if there was work in the regional and national economy for the above hypothetical individual with the added restriction that she is unable to interact with the public at all.  (*Id.*)  The VE testified that such a restriction would not impact the jobs the VE previously named.   The ALJ then asked about the impact on available jobs  if the added limitation that the hypothetical individual could have no production pace.  The VE testified that this requirement would have no impact on the jobs she previously named.  Finally, the ALJ asked if there would be work for the hypothetical individual with a restriction that she would be unable to maintain attention and concentration for up to one-third of the day.  The VE acknowledged that such a restriction would be work preclusive.  (R. at 49.)  When cross-examined by Plaintiff's counsel, the VE confirmed that if the individual was additionally limited to no contact with coworkers, supervisors, or the public due to an inability to behave in an emotionally stable manner and could have no production pace, there would be no jobs available.  (R. at 50.)

### III.   MEDICAL RECORDS

**A.   Mental**

Plaintiff began seeing Halesh Patel, M.D., a family practitioner, in October 2003.  (R. at 376.)  Dr. Patel treated her for asthma, anxiety, depression, sprained knee, headaches, abdominal cramps, sinusitis, dehydration, panic attacks, skin lesions, endometriosis, stress ulcers, ovarian cyst, cervical sprain, GERD, fibromyalgia, urinary tract infections, and irritable bowel syndrome ("IBS").  Dr. Patel also prescribed psychotropic medications to treat her depression.  (R. at 375-77, 643-98.)  Dr. Patel noted in November 2010 that Plaintiff was not compliant with treatment.  (R. at 377.)

Plaintiff sought mental health treatment at Tri-County Mental Health and Counseling Services, Inc. ("Tri-County") on July 2, 2009.  Plaintiff reported a history of childhood sexual, physical, and emotional abuse by her father.  (R. at 343-46.)  She described a "rush" going through her body during episodes of anxiety.  (R. at 343.)  Plaintiff stated she experienced periods of isolation and difficulty being around others due to fears of an anxiety attack.  *Id.*  She also reported crying spells, general sadness, anhedonia, decreased libido, and periods of decreased energy, racing thoughts, and anger.  *Id.*  On mental status examination, therapist, Bonnie de Lange, PCC, found Plaintiff had pressured speech, a depressed and anxious mood, and a tearful affect.  (R. at 344.)  Therapist Lange diagnosed Plaintiff with mood disorder, panic disorder with agoraphobia, and chronic PTSD.  On July 2, 2009, she assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 48.[1]  (R. at 346.)

---

[1]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American

Plaintiff continued to receive mental health treatment at Tri County.  (R. at 341.)  On December 17, 2009, she was evaluated by psychiatrist Robby Wyatt, M.D.  Upon mental status examination, Dr. Wyatt observed that Plaintiff was excessively talkative with normal rate and volume and was tearful and anxious.  He described Plaintiff's mood as "hopeless."  Dr. Wyatt diagnosed PTSD and assigned Plaintiff a GAF score of 51.[2]  (R. at 357-58.)  When seen by Dr. Wyatt on February 22, 2010, Plaintiff reported frequent waking with a startle in the middle of the night.  Dr. Wyatt discussed the benefits of her medications and noted that she continued to have hyper arousal, avoidance behaviors, and re-experiencing symptoms on a somewhat reduced level.  (R. at 354.)

On March 4, 2010, Therapist Lange added the diagnosis of personality disorder in addition to PTSD.  (R. at 342.)  She noted Plaintiff had inadequate social supports and financial stress.  Therapist Lange assigned Plaintiff a GAF score of 51.  *Id.*

By April 22, 2010, Plaintiff reported to Dr. Wyatt that she discontinued counseling because she did not "want to talk about it anymore."  (R. at 352.)   Plaintiff reported feeling terrible and indicated that the Clonazepam had lost its efficacy.  She again complained of "adrenaline surge" as well as hyper arousal, poor sleep, feeling scared and irritable, losing her temper, re-experiencing symptoms, and avoidance behaviors.  Dr. Wyatt discussed medication options with Plaintiff. (R. at 352.)

---

Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 48 is indicative of "serious symptoms . . . or serious impairment in occupational, social, or school functioning." *Id.* at 34.

[2]A GAF score of 51-60 is indicative of moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

On September 15, 2010, Therapist Lange's supervising psychologist Terry Hayes, Ph.D., completed a Mental Residual Functional Capacity assessment.  (R. at 337-40.)  Dr. Hayes opined that Plaintiff was markedly limited in the following abilities: (1) Understanding and remembering very short and simple instructions; (2) remembering detailed instructions; (3) carrying out very short and simple instructions; (4) carrying out detailed instructions; (5) maintaining attention and concentration for extended periods; (6) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (7) working in coordinator with or proximity to others without being distracted by them; (8) making simple work-related decisions; (9) completing a normal workday and work week without interruptions from psychologically based symptoms; (10) interacting with the general public; (11) accepting instructions and responding appropriately to criticism; (12) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (13) responding to changes in the work setting; and (14) setting realistic goals.  (R. at 337.)  Dr. Hayes diagnosed Plaintiff with chronic and recurrent PTSD, severe major depressive disorder, and self-reported alcohol and opioid abuse.  (R. at 340.)

On November 5, 2010, after review of Plaintiff's medical record, Vicki Warren, Ph.D., a State Agency psychologist, assessed Plaintiff's mental condition.  (R. at 55–63.)  Dr. Warren opined that Plaintiff was moderately limited in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration.  (R. at 59.)  She further determined that the evidence did not establish the presence of the "C" criteria of the listing.  (R. at 60.)

Dr. Warren opined that Plaintiff was moderately limited in the following abilities: (1) maintaining attention and concentration for extended periods; (2) performing activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or proximity to others without being distracted by them; (5) making simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interacting appropriately with the general public; (7) asking simple questions or request assistance; (8) accepting instructions and responding appropriately to criticism from supervisors; (9) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintaining socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (11) responding appropriately to changes in the work setting; (12) traveling in unfamiliar places or use public transportation; and (13) setting realistic goals or making plans independently of others.  (R. at 61-63, 72-74.)  Dr. Warren also opined that Plaintiff could not perform her past relevant work because she would be limited to only superficial social interaction.  (R. at 64, 75.)

On February 1, 2011, state agency psychologist, Mel Zwissler, Ph.D. reviewed Plaintiff's medical record and affirmed Dr. Warren's assessment.  Dr. Zwissler also found Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. (R. at 86, 98.)

The records from Tri-County reveal that Dr. Wyatt continued to follow Plaintiff to evaluate her medication.  (R. at  405-14, 496-505.)  On March 17, 2011, Plaintiff reported to Dr. Wyatt that she felt  agitated, upset, and anxious.  (R. at 502.)  Dr. Wyatt noted that Plaintiff felt that her medications were helpful, but that she remained "heavily symptomatic."  (*Id.*)  Dr. Wyatt also noted the following:

> We are really stuck between side-effects and symptoms.  P[atien]t feels there is benefit to medications (despite the fact that [Dr. Wyatt] can't see it, feels there is benefit to counseling (despite fact that by report symptoms set nearly identical to intake), trials of SSRIs, SNRIs, atypicals, benzos, alphaadrenergic agents, sleep aids, clear side-effects.

(*Id*.)  On June 9, 2011, Dr. Wyatt concluded that Plaintiff was at a point of "maximal medical benefits" due to the significant side-effects caused by her medication.  (R. at 499.)

On referral from Plaintiff's counsel, she was evaluated for disability purposes by John Atkinson, M.A. on December 2, 2011.  (R. at 786-97.)  Plaintiff presented with a "dramatic display of crying and tears almost the minute she walked in the room."  (R. at 786.)  Mr. Atkinson noted that "when asked her allegations for disability, the patient was reeling off diagnosis in a kind of rote fashion."  (R. at 787.)  When discussing her substance use history, Mr. Atkinson noted that Plaintiff began to settle down emotionally, become calm, and then progressively more flat and expressionless.  According to Mr. Atkinson, this represented a dramatic change in Plaintiff's demeanor.  (R. at 790.)  Plaintiff reported that she attended cosmetology school, obtained a license, and had been working in that field since age 18.  (R. at 792.)  In addition, Plaintiff reported having second jobs in fields such as healthcare and carpentry.  *Id.*  Mr. Atkinson described Plaintiff's initial speech pattern to be "dramatic, tangential, circumstantial, and over-produced with long rambling monologues" which later changed to "calm, coherent, and of good quality."  (R. at 793.)  He further noted that Plaintiff's judgment was moderately deficient, her concentration markedly impaired, and her memory markedly delayed.  *Id.*  Mr. Atkinson assessed Plaintiff with mood disorder (major depressive disorder with chronic anger state disorder and mood instability associated with borderline personality disorder), anxiety disorder (mixed anxiety with anxiety attacks and paranoid fears), chronic PTSD, cognitive disorder, and borderline personality disorder.  (R. at 796.)

9

Mr. Atkinson also completed a Mental Residual Functional Capacity assessment and opined that Plaintiff was extremely limited in her abilities to behave in an emotionally stable manner, deal with the public, and deal with work stresses.  He also opined that she was markedly limited in her abilities to relate to coworkers, use judgment, interact with supervisors, understand and complete complex and detailed instructions, relate predictably in social situations, and complete a normal workday and workweek.  (R. at 799-800.)  Mr. Atkinson concluded that Plaintiff was unemployable.  (R. at 800.)

**B**.    **Physical**

The only medical opinion related to Plaintiff's alleged physical impairments was prepared by certified nurse practitioner ("CNP") Margaret Tonkovich, from Family Healthcare, Inc.  (R. at 387-89.)  On November 19, 2010, CNP Tonkovich examined Plaintiff and reported that Plaintiff was crying nonstop and was physically unable to squat during the evaluation.  (R. at 388.)  CNP Tonkovich noted that Plaintiff had limited flexion due to pain and tenderness with palpation of the right knee.  (R. at 388.)  CNP Tonkovich opined that Plaintiff could stand or walk up to 30 minutes uninterrupted, and could lift and/or carry up to five pounds.  *Id.*  She found Plaintiff was moderately limited in her ability to bend and perform repeated foot movements.  *Id.*  CNP Tonkovich concluded that Plaintiff was unemployable.  *Id.*

State Agency physicians Leon Hughes, M.D., and Louis Gooey, M.D. reviewed Plaintiff's medical records.  Both opined that Plaintiff's physical impairments were not severe and would not cause more than minimal limitations.  (R. at 55-76.)

## IV.  THE ADMINISTRATIVE DECISION

On January 12, 2012, the ALJ issued her decision.  (R. at 9-26.)  Plaintiff met the insured status requirements through December 31, 2013.  At step one of the sequential evaluation

10

process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 31, 2008.  (R. at 14.)  The ALJ found that Plaintiff had the severe impairments of depression, PTSD, anxiety, borderline personality disorder, borderline intellectual functioning (BIF) and polysubstance abuse.  *Id.*  The ALJ also found that Plaintiff's right knee problems, ovarian cysts, spastic colon, irritable bowel syndrome, gastritis, and fibromyalgia were not severe impairments because they did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities.  (R. at 14-15.)  She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15.)  At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  The ALJ found as follows with regard to Plaintiff's RFC:

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or
              equal the criteria of an impairment set forth in the Commissioner's Listing of
              Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.      Considering the claimant's residual functional capacity, can the claimant
              perform his or her past relevant work?
    5.      Considering the claimant's age, education, past work experience, and residual functional
              capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to only occasional interaction the public, coworkers and supervisors. She is capable of performing routine, repetitive tasks, and occasional production pace work.

(R. at 16.)  In reaching this determination, the ALJ assigned "significant weight" to the opinions of Drs. Warren and Zwissler, finding their assessments "consistent with treatment record as a whole."  (R. at 24.)  The ALJ afforded "no weight" to the limitations identified by Dr. Hayes "as the treatment records clearly indicated that the claimant was doing well with medications and keeping her problems from her children. Treatment success and the claimant being disabled are clearly inconsistent assertions."  (R. at 23.)  The ALJ also gave "no weight" to the opinion of CNP Margaret Tonkovich, finding her opinion "not supported by the objective medical evidence of record" and that the issue of disability is reserved to the Commissioner of Social Security.  *Id.* The ALJ also gave "little weight" to the assessment of consulting psychologist John Atkinson, M.A.  (R. at 21.)  Finally, the ALJ gave significant weight to the opinions of State Agency medical experts, Drs. Hughes and Goorey, who opined that Plaintiff's physical impairments were not severe.  (R. at 24.)  The ALJ concluded that "The alleged duration, frequency and intensity of [Plaintiff's] symptoms is not supported in the extensive treatment record . . . .  There is nothing to support a conclusion that [Plaintiff] is unable to function in a competitive work environment . . . ." consistent with the above RFC.  (R. at 23.)

Relying on the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the state and national economy that Plaintiff can perform.  (R. at 25-26.) She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 26.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

13

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir.  2007)).

# VI.  ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred in four ways.  First,

Plaintiff contends that the mental RFC the ALJ assigned to Plaintiff was contradicted by the

opinions of two State agency physicians, and no rationale was provided addressing the conflict.

Second, Plaintiff posits that the ALJ failed to consider observations by employees in evaluating

Plaintiff's subjective symptoms.  Third, Plaintiff asserts that the ALJ accorded inadequate weight

to the opinions of Dr. Terry Hayes, Ph.D., John Atkinson, M.A., and Margaret Tonkovich, CNP.

Finally, Plaintiff asserts the substantial evidence supports a finding of disability.  (ECF No. 11).

The Court will consider each of Plaintiff's contentions in turn.

## A.    Plaintiff's Mental RFC

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and

mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x

149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of

RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).

Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v.

Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When

considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'"  *Simpson v.

Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

In the instant case, Plaintiff contends that the ALJ erred in assigning Plaintiff's mental RFC because it was contradicted by the opinions of State Agency physicians.  Specifically, Plaintiff indicates that Drs. Warren and Zwissler opined that Plaintiff had "moderate limitations in more than 70 percent of the mental activities required for work."  (Pl.'s Mot. 13, ECF No. 11.) Further, Plaintiff asserts that the ALJ did not address the State Agency physicians' notes that Plaintiff "is limited to no more than superficial social interaction."  (*Id.*)

The Court concludes that substantial evidence supports the mental RFC assigned by the ALJ, which limits Plaintiff to only occasional interaction with the public, coworkers, and supervisors.  As Defendant notes in her response, Dr. Warren and Dr. Zwissler opined that Plaintiff was limited to superficial social interactions when answering why Plaintiff could no longer perform her past relevant work.  (R. at 89, 101.)  Drs. Warren and Zwissler noted that Plaintiff "would work best in a low stress setting that involves limited interaction with others."

15

(R. at 65, 76.)  The ALJ directly incorporated this restriction into her determination of Plaintiff's RFC, both by concluding that Plaintiff was unable to perform her past relevant work and by concluding that Plaintiff could only have "limited interaction with others."  (R. at 17.)  The ALJ did not err in her conclusions related to Plaintiff's mental RFC.

To the extent Plaintiff asserts that the ALJ should have assigned additional weight to moderate limitations opined by Drs. Warren and Zwissler because they were consistent with the limitations opined by Dr. Hayes, that argument is unavailing.  "When evaluating whether substantial evidence supports the Commissioner's conclusion, [the Court] must examine the administrative record as a whole."  *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. App'x 692, 695 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 536 (6th Cir. 1981)); *see also* 20 C.F.R.  § 404.1527 (c)(3) ("Generally, the more consistent an opinion is with the *record as a whole*, the more weight we will give to that opinion") (emphasis added).   Drs. Zwissler and Warren found Plaintiff to be moderately limited in her ability to interact socially, which the ALJ found to be consistent with the treatment record as a whole.

Furthermore, Drs. Zwissler and Warren disagree with Dr. Hayes' assessment that Plaintiff has marked limitations.  First, they opine that Dr. Hayes' assessment that Plaintiff is markedly impaired in her ability to relate to others is "not supported," because he also indicated that Plaintiff reported having acquaintances in high school.  (R. at 86.)  They indicate that Plaintiff's ability to understand and follow simple instructions was not markedly impaired because she completed tenth grade and went on to attend and graduate from cosmetology school. Finally, Drs. Zwissler and Warren note that Dr. Hayes' assessment that Plaintiff has marked impairments in her ability to maintain attention, concentration, persistence and pace, and to

16

withstand the stress associated with day to day work activity is not supported.  As evidence of this, they point to Dr. Hayes' notes indicating that Plaintiff worked as a cosmetologist for fifteen years.

Finally, Plaintiff's reliance on Drs. Zwissler and Warren's opinions that Plaintiff was moderately limited based on their answers to the "questions" section of the Mental RFC Assessment is misplaced. In the questions section, Drs. Zwissler and Warren indicate that Plaintiff is moderately limited in a number of areas.  The Mental RFC Assessment form, however, states as follows:

> The questions below help determine the individual's ability to perform sustained work activities. However, *the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)* in the explanation text boxes.

(R. at 72, 86.) (emphasis added.)   In the narrative assessment portion of the "Social Interaction Limitations" section, Drs. Warren and Zwissler note the following:

> Claimant reported feeling that her medication[s] have been beneficial.  She has seen improvement in hyperarousal and hypervigilance.  She still has nightmares, but in general claimant is active with her family and friends, getting out, and meeting her responsibilities.

(R. at 73, 88.)  The ALJ's conclusion that Plaintiff could have limited interaction with others, therefore, does not conflict with the opinions of State Agency reviewers.

**B.     Failure to Consider Employee Observations**

Plaintiff next contends that the ALJ failed to comply with 20 C.F.R. §§ 404.1529 and 416.929 by not considering the observations of State Agency employees.  Specifically, Plaintiff posits that the ALJ did not consider the notes in a Field Office report indicating that Plaintiff

"was emotional and cried through much of the interview" and that Plaintiff "spoke very softly and struggled to answer questions."  (R. at 222-223.)

After conducting a review of the entire administrative record, the Undersigned concludes that substantial evidence supports the ALJ's conclusions.  The United States Court of Appeals for the Sixth Circuit does not require the ALJ to discuss every piece of evidence in the record, so long as his or her decision is supported by substantial evidence.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (6th Cir. 2005) ("In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision . . . .").  In the instant case, the ALJ discussed Plaintiff's symptoms of depression and anxiety at length.  (*See, e.g.* R. at 18-24.)  The ALJ reviewed Plaintiff's mental health treatment with Tri-County Mental Health, where the practitioners reported that she was well-groomed, "tearful and anxious" at times but also "excessively talkative."  (R. at 19.)  Plaintiff's mental health practitioner further noted that Plaintiff was "cooperative, talkative and pleasant."  (R. at 20.)  Accordingly, the ALJ did not err in failing to cite to the specific observations in the Field Office report, and substantial evidence supports her decision in this regard.

## C.      Weighing of Opinion Evidence

### 1.      Dr. Hayes

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

The record reflects that the ALJ gave no weight to Dr. Hayes' opinion that Plaintiff was markedly limited in fourteen areas, moderately limited in one area, and was unemployable. (R. at 23.) The ALJ provided the following explanation for her decision to assign no weight to Dr. Hayes' opinion:

> The undersigned gives no weight to this opinion as the treatment records clearly indicated that the claimant was doing well with medications and keeping her problems from her children. Treatment success and the claimant being disabled are clearly inconsistent assertions.

(*Id.*)

The Court concludes that substantial evidence supports the ALJ's assignment of no weight to Dr. Hayes' opinions. First, as addressed above, the ALJ provided good reasons for discounting Dr. Hayes' opinion that Plaintiff was markedly limited in work-related mental activities. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 193 (6th Cir. 2009) (concluding that the ALJ met the good reason requirement by noting that the opinion was inconsistent with the physician's treatment notes and with the record evidence); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (concluding that the ALJ met the "good

20

reasons" requirement for a variety of reasons, including by noting that the treating physician's findings were "unsupported by objective medical findings and inconsistent with the record as a whole.")  Second, to the extent that Plaintiff objects to the weight the ALJ afforded to Dr. Hayes' assessment that Plaintiff was unemployable, that challenge is misplaced.  The degree to which an individual is capable of performing work is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1) ("[The Commissioner] is responsible for making the determination or decision about whether [the claimant] meets the statutory definition of disability. . . .   A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled."); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating physician's opinion that the claimant was disabled because such a determination was reserved to the Commissioner.).  The ALJ did not err in her treatment of and assignment of weight to Dr. Hayes' opinion, and substantial evidence supports her conclusions.

### 2.      Psychologist Atkinson and Nurse Practitioner Tonkovich

As set forth above, to qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.   A Court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered.  *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion*. [V]isits to [the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimaint's]

21

condition.").  This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Accordingly, Psychologist Atkinson, who saw Plaintiff once upon a referral from her own attorney, does not qualify as Plaintiff's treating physician.

Additionally, the treating physician rule does not apply to the medical opinions of nurse practitioners.  *See* 20 C.F.R. §§ 404.1513(d)(1), 404.1527(a)(2); *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, SSR 06-03P (S.S.A Aug. 9, 2006) (stating that nurse practitioners are not acceptable medical sources).  The ALJ was therefore required to consider Psychologist Atkinson and Nurse Practitioner Tonkovich's opinions, but was not compelled to afford them substantial weight.  *Beaty v. Comm'r of Soc. Sec.*, 2012 WL 3779700, at *13 (6th Cir. Aug. 3, 2012) (concluding that, under SSR 06-03P, the ALJ is required to consider the opinion of a nurse practitioner, which is "not a demanding standard.").

The Undersigned concludes that substantial evidence supports the ALJ's reasons for discounting Psychologist Atkinson's opinion.  First, the ALJ noted that she assigned no weight to Psychologist Atkinson's opinion because it was "based on a one-time evaluation and inconsistent with the treatment records form the claimant's longstanding mental health treating providers." (R. at 24.)  She further noted that Psychologist Atkinson's reports were internally inconsistent. For example, Psychologist Atkinson reported that Plaintiff's speech became calm and coherent by the end of the interview, that she was successfully raising two sons, and that she cooked, cleaned, and grocery shopped consistently on her own.  (R. at 791-793.)  Further, Psychologist Atkinson's opinions were inconsistent with the record as a whole.  For instance, he reported that

22

Plaintiff "functioned in the mentally retarded range of intelligence." (R. at 21, 794.) Plaintiff, however, reported that she read to her children when they were young, successfully completed cosmetology school, and managed her affairs on her own. Psychologist Atkinson also diagnosed Plaintiff with Borderline Personality Disorder, which was never mentioned in her extensive records at Tri-County Mental Health.

Substantial evidence also supports the ALJ's decision to afford no weight to Nurse Practitioner Tonkovich's opinion that Plaintiff was limited to lifting no more than five pounds and standing/walking for no more than thirty minutes at a time. The ALJ notes that she assigned no weight to the opinion because it was not supported by objective medical evidence. The ALJ also pointed out that Nurse Practitioner Tonkovich's assessment that Plaintiff was "unemployable" is an issue reserved to the Commissioner. (R. at 23.) Indeed, the physical limitations opined by Nurse Practitioner Tonkovich are inconsistent with the opinions of the State Agency reviewers and with Plaintiff's own report of her daily activities. State Agency reviewers Drs. Hughes and Goorey opined that Plaintiff's physical impairments were "not severe." (R. at 59, 90.) Plaintiff indicated that she worked in her yard and went hiking. (R. at 21.) The substantial, objective medical evidence in the record supports the ALJ's assessment of and the weight assigned to the opinion evidence.

**D.     Substantial Evidence Supports the ALJ's Conclusions**

The Undersigned concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. The objective medical evidence in the record as a whole demonstrates that Plaintiff continues to struggle with trauma inflicted upon her during her childhood. Plaintiff, however, has sought counseling and medication to deal with these issues. Plaintiff has noted that the medications provide some relief for her symptoms of anxiety. (R. at 769, 771, and 773.) She

continues to care for her children and run her household without outside assistance.  The ALJ did not err in her determination that Plaintiff was not disabled.

## VII.  CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Specific Errors be **OVERRULED** and that the Commissioner of Social Security's decision be **AFFIRMED**.

## VIII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:   August 4, 2014               _____/s/ *Elizabeth A. Preston Deavers*
                                    Elizabeth A. Preston Deavers
                                    United States Magistrate Judge